MANUFACTURERS NATIONAL BANK

*vs.*

CHABOT & RICHARD COMPANY, et als.

Androscoggin.   Opinion March 27, 1915.

*Accommodation Maker.   Extension of credit between holder of note and principal debtor as effecting surety.   Promissory notes.*

1.  In the absence of any exceptions to the instructions given, it must be presumed that they were unobjectionable and presented clearly all the issues involved.

2.  An agreement for extension of credit between the holder of a note and the principal debtor, which will discharge a surety, must be a valid one, founded on sufficient consideration, and the effect of which is to give further definite time to the principal, without the consent of the surety.

3.  The acceptance by the holder of a note of interest for a stipulated time in advance from the principal debtor, while evidence properly to be considered in determining whether an agreement for an extension which will discharge the surety had been made, and is a sufficient consideration for such an agreement, is nevertheless not in itself such controlling proof that there was such an agreement as to require a verdict against the surety to be set aside, especially where there is positive testimony on behalf of the holder that no such agreement was made.

4.  A receipt given to the receiver of the principal debtor for dividends, and which recited that the payment received was in full for dividends on its claim against the principal under the decree of the court, does not discharge the surety on the note.

5.  Where the principal debtor assigned its property to a trustee for the benefit of its creditors, but the trustee did not take actual possession thereof, and a receiver was appointed at the suit of the surety who did take possession and distributed the assets, and it did not appear that the holder of a note had any part in the assignment or assented thereto, the surety cannot claim discharge on the ground that the property assigned was sufficient in value to pay all of the principal's debts.

6. While a bank has the privilege of charging overdue notes against the checking account of the maker, it is not required to do so, and its failure to do it does not discharge a surety.

7. Money deposited in a bank subject to check becomes the absolute property of the bank, and the latter becomes a debtor to the depositor in an equal amount.

Action upon three promissory notes. Plea, general issue and brief statement. Verdict for plaintiff. Exceptions and motion for new trial filed by defendant. Motion and exceptions overruled.

Case stated in opinion.

*Newell & Woodside,* for plaintiff.

*McGillicuddy & Morey,* for L. T. Chabot.

*J. G. Chabot,* for Chabot and Richard Co. and E. P. Langley.

SITTING: SPEAR, CORNISH, KING BIRD, HALEY, HANSON, PHIL-BROOK, JJ.

KING, J. Action upon three promissory notes, each payable to the plaintiff bank and signed by the Chabot & Richards Co., and indorsed on the back by the other defendants. One note was dated February 10, 1910 on three months for $4000, another dated February 17, 1910 on three months for $2000, and the other dated March 21, 1910 on one month for $10,000. Some payments were made on the principal of each note. A general verdict for $4,932.75 was returned against all the defendants, and the case comes up on a motion for a new trial and exceptions by the defendant L. T. Chabot.

THE MOTION.

At the time the notes were given Langley and Chabot were the principal stockholders in the defendant corporation, the Chabot & Richards Co., and Mr. Chabot was then its president, treasurer and business manager, and continued as such until January 13, 1911, when he was succeeded in those offices by Mr. Langley who thereafter managed the affairs of the corporation until it ceased to do business in the latter part of 1913. The notes in question were issued to obtain a substantial part of the working capital of the Chabot & Richards Co. Prior loans had been obtained for the corporation from the plaintiff bank on similar notes signed by

it and indorsed by Chabot and Langley, such loans, in some instances, having been paid,   The notes in suit were not paid at maturity, but remained in the bank overdue, the interest thereon being paid, and usually in advance monthly.   This practice of paying the interest on the notes while they remained overdue continued for more than two years.

There was more or less friction between Chabot and Langley concerning the control and management of the affairs of the corporation resulting in litigation, and finally the business of the corporation was closed up under a bill in equity brought by Mr. Chabot, in which proceeding a receiver was appointed who distributed the assets of the corporation among its creditors under decree of the court.   Thereafter this action was brought to collect the balance due on these notes.

It was claimed by Mr. Chabot at the trial, among other alleged defenses, that he was an accommodation indorser or surety on the notes and that the plaintiff, without his knowledge or assent, had extended the times of payment therein provided for, whereby he became released from all liability thereon.   The plaintiff contended that there was no agreement on its part for an extension of credit to the maker of the notes and further, that Chabot and Langley, owning practically the whole capital stock of the corporation, and being the beneficiaries of substantially all the profits of its business, ought not to be considered as accommodation indorsers of the notes, but, if such was their status as between them and their corporation, that the bank had no knowledge of that fact.

In the absence of any exceptions to the instructions given to the jury it must be presumed that they were unexceptionable and presented clearly all the issues involved in the case.   A general verdict for the plaintiff having been returned, this court has no means of knowing whether the jury found all or only a part of those issues against the defendant.   It may be that the jury found as a fact that the defendant was an original promisor and not a mere surety on the notes, or if he was in fact a surety only that the bank took the notes without any knowledge of that fact.   If such was their finding, and a decision of the defendant's motion depended upon the determination of the question whether such a finding is justified

by the evidence, the matter would not, we think, be free from doubt. But, assuming that the defendant was in fact a surety on the notes, and that the bank took them with knowledge of that fact, then the question presented under the motion is whether the finding of the jury, that there was no agreement by the bank to extend the times of payment which would release Mr. Chabot from his liability on the notes, is so manifestly against the evidence that it should be set aside.

It is well settled that an agreement for an extension of credit between the holder of a note and the principal debtor which will discharge a surety must be a valid enforceable one, founded on a sufficient consideration, and the effect of which is to give further definite time to the principal, without the consent of the surety, such an agreement as would present a legal obstacle to the prosecution of an action upon the note during the time. *Berry* v. *Pullen,* 69 Maine, 101 ; *Bank of Boothbay Harbor* v. *Blake,* 113 Maine, 313.

The only evidence relied upon in the case at bar to establish such an agreement on the part of the plaintiff bank is the fact that it received from the maker of the notes, after they became due, payments of interest thereon in advance. That circumstance was properly submitted for the consideration of the jury upon the question whether such an agreement was in fact made. The receipt of interest in advance is a good consideration *for* an agreement to extend the time of payment of a debt, but there must also be sufficient proof that an agreement to extend was in fact made. It has been decided in this State, in *Freeman's Bank* v. *Rollins,* 13 Maine, 202, that the receipt of interest for a stipulated time in advance from the principal by the payee, after the note has become payable, is not sufficient evidence of an agreement to give further credit, and does not discharge the surety. In that case interest in advance for sixty days was indorsed on the note without the surety's knowledge or consent. This decision was commented on with approval in *Mariner's Bank* v. *Abbott,* 28 Maine, 280, and also in *Williams* v. *Smith,* 48 Maine, 135, 138.

And such is the doctrine of the Massachusetts cases, the court there holding that the mere payment and receipt of interest in advance on an overdue note is not sufficient proof to establish an enforceable contract to extend the time of the payment of the note,

and does not tie the hands of the bank so that it cannot sue on the note before the expiration of the period for which the interest was advanced. If in such case the bank may sue the note regardless of the receipt of advance interest, likewise may the surety pay the note and proceed against the maker before the end of the advance interest period. *Oxford Bank* v. *Lewis,* 8 Pick., 458; *Blackstone Bank* v. *Hill,* 10 Pick., 129; *Bank* v. *Bishop,* 6 Gray, 317.

The defendant cites *Stewart* v. *Oliver,* 110 Maine, 208. In that case exceptions to a ruling directing a verdict for the plaintiff were sustained. The issues of fact there involved were similar to those in the case at bar, and it was held that there was evidence in support of the defendant's contentions which ought to have been passed upon by the jury. The court in its opinion said: "But there is evidence that the bank without the knowledge or assent of the defendant, on payment of interest in advance, extended the time of payment to Torrey, the principal, nineteen times for a period of four months each time. The payment of interest in advance was a sufficient consideration for the agreement to extend the time of payment." That statement would seem to justify the inference that there was evidence to prove the agreement to extend in addition to the fact of the payment and receipt of interest in advance. But, be that as it may, we do not think that statement implies a decision by the court that the mere payment and receipt of interest in advance is sufficient proof of an agreement to extend credit to the principal which would release the surety. Such a decision would have been in conflict with the long established contrary doctrine laid down in *Bank* v. *Rollins,* supra and the subsequent cases approving it. So far as concerns the point now being considered, the decision in *Stewart* v. *Oliver* only decides, we think, that the fact of the payment and receipt of interest in advance on an overdue note is evidence tending to prove an agreement to extend the time of payment proper for the consideration of the jury. In the case at bar the fact of the payment and receipt of the interest in advance was submitted to the jury. And, moreover, there was the testimony of the cashier of the plaintiff bank that nowithstanding the receipt of the advance interest the bank made no agreement with the principal to extend the time of payment of the notes, and the jury so

found.   To reverse that finding of the jury as erroneous, would be to hold that the fact that the notes in suit remained in the plaintiff bank overdue for more than two years, and that the bank permitted the maker of the notes to pay the interest thereon in advance monthly, is controlling proof that there was an agreement between the bank and the maker of the notes for an extension of the time of their payment which would release the surety, notwithstanding the testimony of the cashier of the bank that there was no such agreement.   We think it cannot be so held, and that the finding of the jury on that issue must stand.

There is no merit in the defendant's claim that he was discharged from his liability on the notes by reason of the fact that on May 16, 1914, the plaintiff accepted from the receiver of the Chabot & Richards Company $2655.38 and receipted for the same as "being in full for dividend on my claim against said company as per decree of court."   That was not a release of the maker of the notes from liability for the unpaid balances due thereon.   It was only the acknowledgment of the receipt from the receiver of the plaintiff's dividend on its claim against the maker of the notes "as per decree of court."   It had no effect to release a surety on the notes from his liability for the unpaid balance.   *Boston Penny Savings Bank* v. *Bradford,* 181 Mass., 199.

The defendant, Chabot, also alleged in defense that the Chabot & Richards Company on the 15th of January, 1913, made an assignment of its property to John L. Reade in trust to convert the same into cash and pay the proceeds thereof on account of its indebtedness to the plaintiff, that the property so assigned was more than sufficient in value to satisfy that indebtedness, including the notes in suit, and that thereafter the plaintiff wrongfully and negligently allowed said property to be diverted from the purposes of said trust, by reason whereof, as he contends, the plaintiff became estopped to collect from him any part of said notes.   And he now urges under his motion, a consideration of that alleged defense. But that defense, too, has been decided adversely to Mr. Chabot by the jury, and, as it must be presumed, under appropriate instructions as to the law applicable thereto.   We find, however, no reason to question that decision.   It does not appear that the plaintiff bank

assented to that assignment, or had any part in its making, or that it became responsible in any way for the doings of the assignee thereunder. It appears that Mr. Reade did not take actual possession of the property as such assignee, but soon after the assignment was made took possession of the property as the temporary receiver appointed in the equity proceedings against the Chabot & Richards Company brought by Mr. Chabot, and thereafter the property passed into the control of the permanent receiver, by whom it was distributed under order of the court.

Mr. Chabot further alleged in defense and now contends that it was the duty of the plaintiff bank to charge these overdue notes against the ordinary banking account, subject to check, which the Chabot & Richards Company had with the plaintiff bank. That contention is not sustainable. Money deposited in a bank, subject to check, does not remain the property of the depositor, subject only to a lien in favor of the bank. It becomes the absolute property of the bank, and the bank thereby becomes a debtor to the depositor in an equal amount. The bank is bound to honor the depositor's checks so long as there is a sufficient balance due the depositor. And it has the right to charge against the depositor's general account any independent debts then due and payable from him to the bank. It is not obliged to do so. It owes no duty to a surety to do so. "The right of the bank to apply the balance of the account to the satisfaction of such a debt is rather in the nature of a set-off, or of an application of payments, neither of which, in the absence of express agreement or appropriation, will be required by the law to be so made as to benefit the surety." *National Bank* v. *Peck,* 127 Mass., 298, 301 and cases cited.

THE EXCEPTIONS.

1. There is no merit in the exceptions to the rulings excluding the inquiries concerning the general banking account of the Chabot & Richards Company with the plaintiff bank during the time the notes remained overdue. As herein before stated, under the motion, a bank owes no duty to a surety on a note of its customer, due and payable to the bank, to charge that note off against the balance of the customer's general banking account with the bank. It may do

that at its option, but the law does not require it to do so even at the surety's request.

2.  The remaining exceptions are to rulings excluding inquiries as to the value of the property described in the assignment from the Chabot & Richards Company to Reade hereinbefore mentioned and considered under the motion.  As there stated, the evidence fails to show that the plaintiff assented to that assignment; and we find nothing in the case to justify the contention that the plaintiff became responsible to Mr. Chabot to see that the property described in the assignment was applied to the payment of these notes.

We find therefore no error in the exclusion of the inquiries as to the value of the property.

*Motion and exceptions overruled.*

Justices Bird and Haley do not concur.