DECISION
The plaintiff, the Rhode Island Depositors Economic Protection Corporation (DEPCO), moves this Court for summary judgment pursuant to R.C.P. 56 in this mortgage deficiency action. The first defendant is Northern Mortgage Funding, Inc. (Northern), a Rhode Island corporation, and the second is Alan Bercovitz, President of Northern and a resident of Providence.
Facts/Travel
The facts of this case are not in dispute. On November 7, 1989, Mr. Bercovitz, as Northern's President, executed a promissory note on behalf of the corporation to the benefit of Colonial Bank, a Rhode Island savings bank, for valuable consideration of $59,000. This note was secured by a mortgage on property located at 108 Ohio Avenue in Providence. Mr. Bercovitz also signed an unconditional guaranty, in which he agreed to see the note paid according to its terms.
Sometime later, the defendants defaulted on their obligations. In an effort to resolve the situation out of court, they hired a real estate broker in early 1992 to market and sell the property securing the note. In late May, Northern entered into a proposed sales agreement which would see the property sold for $54,000, a sum equal to its fair market value according to Northern's real estate broker. Northern sought approval of this sale in exchange for plaintiff's release of its mortgage on the property, but DEPCO finally rejected this arrangement in early 1993.
Defendants continued in their attempts to find a buyer, despite DEPCO's plans to sell the property at foreclosure sale on July 1, 1993. Two other arrangements were nearly finalized before that date, but neither was formally submitted to DEPCO as was the first proposal. The foreclosure sale went forward, and the property was sold for $36,500, after which this action was instituted to recover the deficiency.
Count I of plaintiff's complaint alleges that Northern has defaulted on its obligations under the note, and that DEPCO holds it as successor-in-interest to Colonial Bank. Count II contains similar allegations against Alan Bercovitz as guarantor. Documents and affidavits indicate that the defendants are liable for outstanding principal, accrued interest, costs and attorney fees. DEPCO now moves for summary judgment.
Summary Judgment
Our Supreme Court has repeatedly stated that disposition of a claim by means of summary judgment is a drastic remedy which should be employed only when the pleadings, affidavits, depositions and other documentary matter before the Court show that the moving party is entitled to judgment as a matter of law and that there are no genuine issues of material fact to be resolved by the factfinder. McPhillips v. Zayre Corp.,582 A.2d 747, 749 (R.I. 1990). Failure to set forth such facts will result in summary judgment entered against the party opposing the motion. Ardente v. Horan, 117 R.I. 254, 257-58, 366 A.2d 162, 164 (1976).
Motion for Summary Judgment
In support of its motion for summary judgment, DEPCO contends that where a contract is clear and unambiguous as to its terms, construing such a contract becomes a legal issue, proper for summary judgment. Lennon v. MacGregor, 423 A.2d 820, 822 (R.I. 1980). DEPCO calls the Court's attention to the material, undisputed facts of this case, which indicate that Northern is liable to DEPCO, the note's current holder. The facts likewise show that Mr. Bercovitz is liable to plaintiff, as he is the signatory of the guaranty. DEPCO having accelerated the sums due and owing on the loan, both defendants are liable for any deficiency after the sale of the property securing the note.
Defendants object to DEPCO's motion, however, arguing that summary judgment should be denied because DEPCO has failed to comply with its duty to mitigate damages. This duty provides that "a party may not recover damages that the injured party could have avoided without undue risk, burden or humiliation." Bibby'sRefrigeration. Heating Air Conditioning, Inc. v. Salisbury,603 A.2d 726, 729 (R.I. 1992). Defendants contend that DEPCO violated this obligation when it rejected Northern's first proposed sale because the proposed price exceeded the highest bid at the foreclosure sale. Therefore, defendants argue that their liability should be reduced by the difference between the amount it would have received pursuant to defendants' proposal.
Plaintiff argues that DEPCO purchases assets free from all liabilities except those specifically assumed. Rhode IslandDepositors Economic Protection Corporation v. Robert L.Phillips, et al., 643 A.2d 215 (R.I. 1994). This doctrine, like the DEPCO statute itself, is modeled on the body of law pertaining to the FDIC and the treatment it receives in litigation. In fact, the status held by DEPCO in litigation has been viewed as analogous to that of the FDIC. See Delaney v.DEPCO, C.A. No. WC 89-420 (Famiglietti, J.; November 4, 1993), slip op. at 3. The FDIC (and thus DEPCO) is treated as if it were a holder in due course of the assets which it owns, preventing various claims and defenses from being asserted against it. Barry Stuart Zisman, Banks and Thrifts: Government Enforcement andReceivership, §§ 25.10-25.13 (1994). However, even a holder in due course "may still be subject to any claims or defenses which arise against him after he has taken the instrument." G.L. (1992 Reenactment) § 6A-3-305 as amended by P.L. 1992, ch. 324 § 1, Official Comment 1. In other words, though DEPCO is shielded from many of the claims and defenses which would operate to its detriment stemming from events before DEPCO purchased the asset, this protection does not extend to claims or defenses arising from DEPCO's own actions. Accordingly, DEPCO does have a duty to mitigate damages.
Nonetheless, the facts which defendants bring to the Court's attention do not raise a genuine issue of material fact as to whether DEPCO failed to mitigate damages. The proposed agreement called for DEPCO to accept $54,000 for the property and to discharge the remainder of the debt; not only was the total outstanding principle on the note significantly higher ($58,740.53), but the net proceeds from the sale, which DEPCO would have been able to apply to the note were but $50,760. Thus, defendants wished DEPCO to write off a significant portion of the debt which it was owed, and now assert that DEPCO's failing to do so amounts to a refusal to mitigate damages. While this duty "prevents [aggrieved] parties from sitting idly by and permitting their damages to accumulate" (Bibby's Refrigeration at 729), nowhere does this doctrine state that a creditor must sacrifice loan principal to which it is entitled in order to mitigate damages.
In addition, the DEPCO statute states that DEPCO shall seek to "[m]aximize the return from the sale or other disposition of [its] assets" pursuant to G.L. (1993 Reenactment) §42-116-2(e)(i), as amended by P.L. 1993 ch. 422, § 1. Defendants essentially contend that DEPCO, in managing its assets, must generate as much cash income as practicable, by accepting deals like the one proffered by defendants in this case, for example. The cost of this liquidation, however, is an amount that DEPCO would be forced to write off as part of the agreement. By acting as it has in this case, DEPCO has maintained the note's full value by selling the property, securing it and seeking a judgment for the deficiency. It is irrelevant that at this stage DEPCO has realized less cash than it would had it accepted defendants' proposal, for DEPCO may pursue execution on the deficiency judgment after it obtains one.
Defendants further contend that DEPCO failed to mitigate its damages, arguing that between the time DEPCO refused to sanction the $54,000 sale and when the foreclosure sale occurred, the value of the property dropped due to vandalism and aging. This Court is mindful that "[n]othing is better settled than the proposition that it is the duty of the debtor to pay his debt and that it is not the duty of the creditor to see that it is paid. . . . . It is accordingly established that mere forbearance to foreclose a mortgage given as security is no defence [sic], even if more would have been realized by the mortgage had it been properly foreclosed." Lewis v. Blume, 226 Mass. 505, 508,116 N.E. 271, 272 (1917). Moreover, in Lewis v. Blume, the mortgage delayed foreclosure over an 18 year period, during which time the value of the property actually declined from $8,900 to $3,500, yet such forbearance did not evidence the mortgagee's failure to mitigate damages.
After considering the arguments of counsel and reviewing the affidavits submitted in support of the motion and the trial discovery responses in the file, this Court finds that there is no material issue of fact to be resolved by the factfinder, and that DEPCO is entitled under the mortgage note and guaranty to judgment as a matter of law.
Counsel shall submit the appropriate judgment for entry.